UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TRAVELERS CASUALTY AND SURETY :
COMPANY, f/k/a The Aetna Casualty and :
Surety Company, : 04 Civ. 9370 (JSR)
:
        Plaintiff, : OPINION AND ORDER
:
        -v- :
:
ACE AMERICAN REINSURANCE COMPANY, :
f/k/a CIGNA Reinsurance Company, :
f/k/a INA Reinsurance Company, and :
INSURANCE COMPANY OF NORTH AMERICA, :
:
        Defendants. :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

    This is a reinsurance collection dispute brought by plaintiff Travelers Casualty and Surety Company ("Travelers"), formerly known as the Aetna Casualty and Surety Company, against defendants ACE American Reinsurance Company, formerly known as the CIGNA Reinsurance Company, formerly known as INA Reinsurance Company, and Insurance Company of North America (collectively, "ACE") for breach of contract relating to ACE's refusal to pay Travelers' outstanding billings on three three-year facultative reinsurance certificates (the "Three-Year Certificates") and six one-year facultative reinsurance certificates (the "One-Year Certificates"). Both parties have moved for summary judgment.

    The following facts are not in genuine dispute. Between 1971 and 1985, Travelers issued three excess insurance policies with annual aggregates to Dow Corning Corporation ("Dow"); the policies provided coverage in excess of the coverage of umbrella policies issued by the Home Insurance Company. See Policies Nos. 01 XN 247,

01 XN 752, and 01 XN 753 attached as Exs. 10-12 to Affidavit of Marc I. Bressman, May 26, 2006 ("Bressman Aff."); Policies HEC 4345068 and HEC 4973974 attached Exs. G and H to Affidavit of Elizabeth Hinkle, May 25, 2005. The relevant terms of coverage under these excess policies may be summarized as follows:

> **01 XN 247 (policy period: 6/11/72 to 6/11/75):**
> "30% ($4,500,000 Maximum) Quota Share of
> $15,000,000. Each Occurrence."
> "30% ($4,500,000 Maximum) Quota Share of
> $15,000,000. Annual Aggregate."
>
> **01 XN 752 (policy period: 6/11/75 to 6/11/78):**
> "53.33% ($8,000.000 Maximum) Quota Share of
> $15,000,000. Each Occurrence."
> "53.33% ($8,000.000 Maximum) Quota Share of
> $15,000,000. Annual Aggregate."
>
> **01 XN 753 (policy period: 6/11/75 to 6/11/78):**
> "54.55% ($6,000,000 Maximum) Quota Share of
> $11,000,000. Each Occurrence."
> "54.55% ($6,000,000 Maximum) Quota Share of
> $11,000,000. Annual Aggregate."

Id.

To minimize its risk on these policies, Travelers purchased reinsurance from several reinsurers including ACE. These included the Three-Year Certificates, see Policies Nos. FRC 01270, FRC 07107, FRC 07108 attached as Exs. 1-3 to Bressman Aff, the terms of which may be summarized as follows:

> **FRC 01270 (policy period: 6/11/72 to 6/11/75):**
> Item 2 (Policy Limits and Application):
> "$4,500,000 CSL each occ. agg. part of
> $15,000,000 CSL each occ.-agg. excess of
> $9,000,000 CSL each occ.-agg. which is excess of
> underlying insurance"
> Item 4 (Reinsurance Accepted): "$1,500,000 CSL
> each occ.-agg. part of $4,500,000 CSL each
> occ.-agg."

2

**FRC 07107 (policy period: 6/11/75 to 6/11/78):**
Item 2 (Policy Limits and Application):
"$8,000,000 CSL each occ.-agg. part of
$15,000,000 CSL each occ.-agg. which is excess of
$24,000,000 CSL each occ.-agg. which is excess of
underlying insurance"
Item 4 (Reinsurance Accepted): "$2,000,000 CSL
each occ.-agg. part of $8,000,000 CSL each
occ.-agg. part of $15,000,000 CSL each occ.-agg."

**FRC 07108 (policy period 6/11/75 to 6/11/78):**
Item 2 (Policy Limits and Application):
"$6,000,000 CSL each occ.-agg. part of
$11,000,000 CSL each occ.-agg. excess of
$39,000,000 CSL each occ.-agg. which is excess of
underlying insurance"
Item 4 (Reinsurance Accepted): "$500,000 CSL each
occ.-agg. part of $6,000,000 CSL each occ.-agg.
of $11,000,000 CSL each occ.-agg."

Id. In addition, each of the Three-Year Certificates included what is commonly known in the insurance industry as a "follow the form" clause, which states in pertinent part that

> the liability of the Reinsurer specified in Item 4 of the said Declarations shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy.

See ACE0004, ACE0021, and ACE0034, attached as Exs. 1-3 to Bressman Aff.[1]

---

[1] A "follow the form" clause "simply obliges the reinsurer to indemnify the ceding company fully within the scope of the reinsured risk when the claim falls within the scope of that risk as a matter of law (subject to exclusions explicitly delineated within the certificate of reinsurance)." Aetna Cas. & Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328, 1349 (S.D.N.Y. 1995); see also 2 Ostrager & Newman, Handbook on Insurance Coverage Disputes § 13.01[a], at 868 (12th ed. 2004).

3

Travelers subsequently extended the reinsurance provided under two of the three Three-Year Certificates for two additional years through the purchase of six One-Year Certificates, the relevant terms of coverage of which can be summarized as follows:[2]

> **Renewal of FRC 07108 (<u>supra</u>):**
> FRC 021404 (policy period: 6/11/78 to 6/11/79);
> FRC 026892 (policy period: 6/11/79 to 6/11/80);
> FRC 031570 (policy period: 6/11/80 to 6/11/81):
> <u>Item 4 (Reinsurance Accepted)</u>: "$1,250,000 CSL each occ.-agg. part of $10,000,000 CSL each occ.-agg."
>
> **Renewal of FRC 07107 (<u>supra</u>):**
> FRC 021405 (policy period: 6/11/78 to 6/11/79);
> FRC 026893 (policy period: 6/11/79 to 6/11/80);
> FRC 031571 (policy period: 6/11/80 to 6/11/81):
> <u>Item 4 (Reinsurance Accepted)</u>: "$1,250,000 CSL each occ.-agg. part of $10,000,000 CSL each occ.-agg."

<u>See</u> Policies Nos. FRC 021404, FRC 026892, FRC 031570, FRC 021405, FRC 026893, and FRC 031571 attached as Exs. 4-9 to Bressman Aff. The One-Year Certificates also included "follow the form" clauses that are materially similar to those found in the Three-Year Certificates. <u>See</u> <u>id.</u> ¶ 1 (Application of Certificate).

During that same time period, Dow was engaged in, among other things, the business of manufacturing, selling, and distributing silicone breast implants and was subsequently exposed to thousands of products liability claims. Thereafter, Dow brought suit for insurance coverage relating to these breast implant claims against

---

[2] For the sake of simplicity, the Court uses the abbreviation "occ.-agg." in its summary of the One-Year Certificate terms, though the One-Year Certificates themselves actually use the abbreviations "occ/agg" and "occ.-agg." interchangeably.

4

Travelers. In November 1994, Travelers entered into a settlement agreement with Dow (the "1994 Settlement") resolving the coverage dispute between them. In May 1995, Dow filed for Chapter 11 bankruptcy protection, and almost a decade later, in June 2004, Dow's Plan of Reorganization became effective. On June 17, 2004, Travelers billed ACE $12,070,615.98 for payment on claims settled pursuant to the 1994 settlement. ACE refused payment on these claims and this suit followed.

### **The Three-Year Certificates.**

While the parties are in agreement that the underlying excess policies provide coverage up to certain aggregate limits, they disagree about whether the Three-Year Certificates provide coverage up to a single aggregate limit for the three-year period or for three annual aggregate limits. Coverage under the latter type of liability limit could significantly enlarge ACE's total exposure.

Travelers contends that ACE's refusal to pay its outstanding billings is contrary to the terms of the Three-Year Certificates, which, according to Travelers, provide for three annual aggregate limits. In support of its "annualization" reading of the Three-Year Certificates, Travelers points to the "follow the form" clauses found in each certificate that it contends indicate a clear intent by the parties to have the terms of the Three-Year Certificates mirror the terms of the underlying, reinsured excess policies. See supra; ACE0004, ACE0021, and ACE0034, respectively, attached as Exs. 1-3 to Bressman Aff. Any other reading, according to plaintiff, would

5

subvert what it says is the hallmark of facultative reinsurance: concurrency.

In addition, Travelers points to the affidavit of Charles Stevens, who was employed by a predecessor concern of plaintiff where he underwrote excess insurance policies. Stevens states that "there was an implicit (if not explicit) agreement between [Travelers] and [ACE] that the reinsurer would follow all of the terms of the reinsured contract" and that he never would have agreed to the Three-Year Certificates without annual aggregate limits. Affidavit of Charles Stevens, May 25, 2005, ¶¶ 1-2, 5, 9.[3] Finally, Travelers contends that there is a course of dealing between the parties that evidences that defendants understood the Three-Year Certificates to contain three annual aggregate limits. See Bressman Aff., Exs. 42-43, 21-27, 52.

On the other side, ACE argues that the language of the Three-Year Certificates clearly and unambiguously provides for a single aggregate limit for the three-year coverage period. Since the language of the certificates nowhere includes the word "annual," the certificates do not lend themselves to more than one reasonable interpretation, and, therefore, any interpretation of the

---

[3] Plaintiff also relies on two additional experts, W.J. Gilmartin and Peter F. Hall, to support its reading that the Three-Year Certificates provide for three annual aggregate limits. The Court has only partially considered the testimony of Mr. Gilmartin, as his expert report was only provided to the Court in defendants' reply papers, and has not considered Mr. Hall's testimony at all, as his report is not included in the record before the Court.

certificates must be limited to the four corners of the relevant instrument without regard to any extrinsic evidence. In support of their reading, defendants point to the expert report of Geroge Gottheimer, an international consultant at Kernan Associates, Inc., for the proposition that the absence of the word "annual" in the certificates is determinative. See Expert Report of George Gottheimer, March 23, 2005, at 4, attached as Ex. A to Affirmation of James M. Dennis, June 24, 2005. Any interpretation that were to read the word "annual" into the certificate language or were to consider extrinsic evidence, according to Gottheimer, would be inappropriate. Id.

Furthermore, defendants read the Second Circuit's decisions in <u>Unigard Security Insurance Co. v. North River Insurance Co.</u>, 4 F.3d 1049 (2d Cir. 1993) and <u>Bellefonte Reinsurance Co. v. Aetna Casualty and Surety Co.</u>, 903 F.2d 910 (2d Cir. 1990), to stand for the proposition that the language in a facultative reinsurance certificate is of paramount importance and that, therefore, a "follow the form" clause cannot be used to trump or rewrite the liability limit of a certificate.

It is well settled under New York law, which here governs, that reinsurance contracts are interpreted in accord with general contract principles. See <u>British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.</u>, 342 F.3d 78, 81-82 (2d Cir. 2003). Where a reinsurance contract "is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of

7

the instrument, and not from extrinsic evidence." Id. at 82 (internal quotation omitted). Only where an ambiguity exists can the Court look to extrinsic evidence to determine the intent of the parties at the time of the formation of the contract. Id.

But these black letter contract rules do not apply perfectly to the interpretation of a facultative reinsurance certificate that contains a "follow the form" clause. This is because these clauses incorporate by reference the terms of the underlying insurance policy (except where explicitly provided to the contrary in the certificate, see, e.g., supra), and, therefore, they necessarily expand the letter of the certificate beyond its four corners. See, e.g., United Fire & Cas. Co. v. Arkwright Mut. Ins. Co., 53 F. Supp. 2d 632, 642 (S.D.N.Y. 1999) ("Facultative reinsurance contracts are not integrated agreements."). So the question becomes when and to what extent a court interpreting the terms of such a certificate may look behind the certificate's plain language and consider the underlying insurance policy itself in order to determine the true meaning of the certificate before considering any extrinsic evidence.

In Bellefonte, 903 F.2d 910, the issue before the Court was whether reinsurers are obligated to pay additional sums for defense costs over and above the limits stated in a reinsurance certificate that contains a "follow" clause.[4] Id. at 910-11. The Second Circuit

---

[4] A "follow" clause is defined as either a "follow the form" clause or a "follow the fortunes" clause, see infra.

8

held that a "follow the fortunes" clause[5] cannot "override the limitation on liability" of a reinsurance certificate and that, therefore, a reinsurer is "liable only to the extent of the risk [it] agreed to reinsure. [It] cannot be liable for the insurer's actions in excess of the agreement." Id. at 913-14. That Court reasoned that "follow the fortunes" clauses "coexist with, rather than supplant, the liability cap. To construe the certificates otherwise would effectively eliminate the limitation on the reinsurers' liability to the stated amounts." Id. at 913. Thus, only where the liability terms of the certificate differ from those in the underlying policy can the presumption of concurrence between the two policies be overridden. In Unigard, 4 F.3d 1049, the Second Circuit extended the logic of Bellefonte to "follow the form" clauses and held that, where the limitation on liability provision caps the reinsurer's liability under the certificate, "[a]ll other contractual

---

[5] The "follow the fortunes" clause encompasses the "follow the fortunes" doctrine, which

> binds a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation. "Under the 'follow the fortunes' doctrine, a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if technically not covered by it. A reinsurer cannot second guess the good faith liability determinations made by its reinsured . . . ."

British Int'l Ins., 342 F.3d at 85 (quoting Christiania Gen. Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268, 280 (2d Cir. 1992) (internal citation omitted)).

9

language must be construed in light of that cap." Id. at 1071
(quoting Bellefonte, 903 F.2d at 914).

Most recently, the First Circuit handed down two opinions that discuss how "follow" clauses ought to govern the interpretation of facultative reinsurance certificates. In Commercial Union Insurance Co. and American Employers' Insurance Co. v. Swiss Reinsurance America Corp., 413 F.3d 121 (1st Cir. 2005) ("Commercial Union"), the issue was whether, under several three-year reinsurance certificates, defendant Swiss Re was protected by a single per-occurrence limit on its liability for the relevant three-year policy period or whether the limit applied separately for each policy year. Id. at 122. That Court found that the "basic presumption of concurrence" between terms of a reinsurance certificate and the underlying policy is presumed "subject only to any clear limitation to the contrary in the [facultative certificates themselves]." Id. at 128 (emphasis added). But, the Court held, "if sufficiently clear, specific limits in the certificate control over the general aim of concurrence and ordinary 'follow' clauses." Id. (citing Unigard, 4 F.3d at 1070-71; Bellefonte, 903 F.2d at 914).

Similarly, in American Employers' Insurance Co. v. Swiss Reinsurance American Corp., 413 F. 3d 129 (1st Cir. 2005) ("American Employers"), which was a companion case to Commercial Union, supra, and also dealt with the question of annualization of reinsurance certificates, the First Circuit reiterated that "although . . . follow-the-form clauses presume that the reinsurance dovetails with

10

the underlying liability insurance, this presumption can be overridden by clear language in the certificate that cuts off liability under the reinsurance policy even where the cedent is liable to the insured." Id. at 137.

Despite defendants' arguments to the contrary, the caselaws of the First and Second Circuits do not differ in any material respect. See Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am., 419 F.3d 181 (2d Cir. 2005) (citing generally the First Circuit cases). Both Circuits hold that, where a certificate contains a "follow the form" clause, though concurrency is presumed between terms of the certificate and the underlying policy, exceptions can be made through the placement of explicit liability limitations in the certificate itself. In the instant case, however, the relevant and operative language used in the underlying excess policies (as recited in Item 2 of the Three-Year Certificates) and the reinsurance coverage (as recited in Item 4 of the Three-Year Certificates) is identical: i.e., both use the abbreviation "each occ.-agg." to describe the relevant coverage period. Compare, e.g., FRC 01270, attached as Ex. 1 to Bressman Aff., at ACE0001 (terms quoted supra) and FRC 07107, attached as Ex. 2 to Bressman Aff., at ACE0018 (same), with FRC 07108, attached as Ex. 3 to Bressman Aff., at ACE0031 (same). Accordingly, since the certificates do not clearly or explicitly limit the coverage terms of the underlying policy, the presumption of concurrency between the excess policy and the Three-Year Certificates is not overridden. Therefore, without

11

considering any extrinsic evidence, the Court concludes that the only reasonable interpretation of the phrase "each occ.-agg." as applied to Item 4 of the Three-Year Certificates is that each Three-Year Certificate provides coverage for three annual aggregate limits. See Bellefonte, 903 F.2d at 913-14; Uniqard, 4 F.3d at 1070-71; accord Commercial Union, 413 F.3d at 128; American Employers, 413 F.3d at 137.

**The One-Year Certificates and Certificate FRC 01708.** Travelers also contends that ACE is improperly withholding (a) $5,903,348.24 in billings on the One-Year Certificates, because the One-Year Certificates only cover a one-year term and, therefore, necessarily do not involve the so-called annualization issue discussed supra, and (b) $417,495.75 in billings on Three-Year Certificate FRC 01708, because this same sum would be due under either plaintiffs' or defendant's reading of FRC 01708. See Affidavit of Steven H. Bencher, May 26, 2005 ("Bencher Aff."), ¶¶ 6-7; Policies Nos. FRC 02 14 04, FRC 02 14 05, FRC 02 68 92, FRC 02 68 93, FRC 03 15 70, and FRC 03 15 71 attached as Exs. 4-9 to Bressman Aff; Policy FRC 01708 attached as Ex. 3 to Bressman Aff.; see also Ex. 42 to Bressman Aff.

In response, ACE claims that they are operating in accordance with industry custom and, therefore, are fully justified in withholding payment on the One-Year Certificates because they have "acted in this situation in exact accord with how Travelers has acted with regard to ACE" -- i.e., since Travelers is unjustifiably

12

withholding payment on reinsurance claims unrelated to the facultative certificates at issue in this law suit, ACE need not pay Travelers anything here. See Defendants' Memorandum of Law in Opposition to the Motion for Summary Judgment by Travelers Casualty & Surety Company, at 24; Hr'g Tr., July 26, 2005. ACE also contends that they have no obligation to pay Travelers on any claims related to the One-Year Certificates because it is ACE's company policy to treat all their billings under separate facultative certificates as a whole, meaning that, unless all the claims are resolved as to all the relevant certificates, no payment to Travelers is required. See Dep. of Elizabeth Hinkle, Mar. 24, 2005, at 42-45, attached as Ex. 51 to Bressman Aff.

ACE's reliance on the childhood maxim that "two wrongs make a right" is as baseless in this dispute as it was in the schoolyard years ago. Indeed, ACE has pointed to no caselaw or legal basis -- such as a valid set-off, a claim of self help, or a discrete contractual right -- that support its position that it is proper to withhold payment on these claims. Instead, ACE relies on unsubstantiated claims of industry custom and course of dealing to support its actions. See British Int'l Ins. Co., 342 F.3d at 83-84 (the burden of proving trade usage lies with the party "benefitting from its existence" and "[t]he practice of one company . . . is generally insufficient to establish a trade usage") (collecting cases). But in this suit, these billings are clearly not undifferentiated billings that must be considered en masse; rather,

13

the amount due under each certificate can be easily determined. See Exs. 35-42 to Bressman Aff.; Bencher Aff. ¶¶ 6-7. And any defense of industry custom or good faith does not trump the rule of law or the terms of undisputedly valid certificates. Accordingly, the Court finds that Travelers is rightly entitled to the $6,320,843.99 currently withheld by ACE under the One-Year Policies and under the Three-Year Certificate FRC 01708.

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment in all respects. Plaintiff shall prepare a proposed final judgment and submit it to the Court, on three business days' notice to defendants, by no later than October 21, 2005.

SO ORDERED.

JED S. RAKOFF U.S.D.J.

Dated: New York, New York
October 12, 2005